Shauk, J.
Counsel for the State urge upon us the yiew that when Liffring did “prescribe, direct and recommend for the use of one Carey B. McClelland, a certain agency, to-wit: a system of rubbing and kneading the body commonly known as osteopathy, for the treatment, cure and relief of a certain bodily infirmity or disease,” as charged in the indictment, he practiced medicine as defined in section 4403f. of the act “to regulate the practice of medicine in Ohio,” passed February 27,1896 (92 O. L., 44), and not haying procured from the State Board of Medical Registration and Examination, and left with the probate judge of the county, a certificate of qualification to practice medicine or surgery as required by sections 4403c and 4403d of the act, he is guilty of the misdemeanor defined in section 4403y and subject to fine or imprisonment or both. The prac: tice which the act regulates is defined in section 4403†: “Any person shall be regarded as practicing' medicine or surgery within the meaning of this act who shall append the letters ‘M. D4 or 4M. B.; to his name or for a fee prescribe, direct or recommend for the use of any person, any drug or medicine or other agency for the treatment, cure or relief of any wound, fracture or bodily injury, infirmity or disease.”
*50 It does not seem to be supposed that the indictment charges the practice of surgery. But the proposition urged by the attorney general is that the “system of rubbing and kneading the body known as osteopathy,” which ithe indictment does charge, is an agency within the meaning of the statute, and that prescribing and directing the use of such agency is the offense defined by the statute; and it is urged that unless we give so- comprehensive a meaning to the word “agency” the associated words ’’medicine” and drug” will be denied all meaning and the purpose of the act defeated. Our knowledge of osteopathy is not definite-. The word has not found recognition in the dictionaries. It is, however, certain that its use exceeds the suggestions of its etymology. The rubbing and kneading charged in the indictment are consistent with our general knowledge that, in practice, the adherents to osteopathy wholly reject drugs and medicines. The application of the theory that disease may be cured by the manipulation of different parts of the body would not, with close regard to the meanings of words, be called an agency. But assuming a meaning of the word which might justify its being so used, if that would be consistent with the associated words, we meet the suggestion that in obedience to the maxim, noscitur a \§ociis, the meaning of the word agency must be limited by that of the associated words “drug” and “medicine.” The cases in which the meanings of words have been thus limited are so numerous that the labor of collecting them appropriately belongs to the compilers of digests. Certainly, this maxim should not be so applied as to defeat the object of legislation. It should always serve the rule that the object of construction is to ascertain intention. In substance the view presented in support of the ex *51 ception is that the legislature intended to prohibit the administration of any agency and the recommendation of any mode of treating diseases or’ patients, except by the holders of certificates from, the board. That purpose would have been unmistakably expressed in fewer words than are employed, in this act. With the assumed meaning of the word! “agency,” it would have been precisely expressed' by this act if the words “drug” and medicine” had been omitted. The maxim invoked is applicable to the case because it serves the universal rule that,: in seeking the meaning of an act, all of its words-must be .considered. It requires the conclusion that the agency intended by the legislature is to be of the general character of a drug or medicine, and to be applied or administered, as are drugs or medicines, with a view to producing effects by virtue of its own potency.
The same conclusion will follow a more general,, and less technical, view of the subject. The objection which its opponents urge against osteopathy is. that it recognizes a fragment of truth and assumes, that it is the universe of truth; and that, by rejecting remedial agencies generally believed to be effective if rightly prescribed, it withholds from those* who resort to it available means of relief and cure. It is not charged that it is otherwise hurtful, nor-that its administrations are attended with danger. The obvious purpose of the act under consideration is to secure to those who believe in the efficacy of medicines the ministrations of educated men, thus-preventing fraud and imposition; and to protect society from the evils which result from the administration of potent drugs by the ignorant and unskillful. The purpose of the act is accurately indicated *52 by its title to be “to regulate the practice of medicine.”
No provision of the act indicates an intention on the part of the legislature that those who do not propose to practice medicine shall graduate from a college of medicine, or otherwise become learned in its use. Without such knowledge no, one is entitled to a certificate from the Board of Examination. The result of the view urged in support of the exception is that, by this act, the general assembly has attempted to determine a question of science and to control the personal conduct of the citizen without regard to his opinions, and this in a matter in which the public is in nowise concerned. Such legislation would be an astonishing denial of the commonly .accepted views touching the right to personal opinion and conduct which does not invade the rights of •others. From the operation of constitutional provisions designed to establish and perpetuate freedom of thought and action in matters pertaining to religion, it results that in things which are of the first concern we are imperatively denied the guidance of legislative wisdom, and our immortal part is exposed to the enduring pain which is believed to follow the acceptance of religious error.
In the absence of a statute clearly indicating it, the General Assembly will not be presumed to have intended the consequences involved in this contention.

Exception overruled.